BETSY C. MANIFOLD (SBN 182450)
RACHELE R. BYRD (SBN 190634)
MARISA C. LIVESAY (SBN 223247)
BRITTANY N. DEJONG (SBN 258766)
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELAINE WANG,<br><br>                    Plaintiff,<br><br>  v.<br><br>MYOKARDIA, INC., SUNIL AGARWAL, M.D., MARY CRANSTON, TASSOS GIANAKAKOS, DAVID MEEKER, M.D., MARK PERRY, KIM POPOVITS, AND WENDY YARNO,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><u>DEMAND FOR JURY TRIAL</u> |

1    Plaintiff Elaine Wang ("Plaintiff"), by her attorneys, makes the following allegations against

2   MyoKardia, Inc. (sometimes referred to herein as "Myokardia" or the "Company") and the members

3   of the board of directors of Myokardia (the "Board" or "Individual Defendants," along with

4   Myokardia, collectively referred to as the "Defendants"), for their violations of Sections 14(e), 14(d)

5   and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d),

6   78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in

7   connection with the proposed acquisition (the "Proposed Transaction") of Myokardia by affiliates of

8   Bristol Myers Squibb Company, a Delaware corporation ("Bristol Myers Squibb").  The allegations

9   in this complaint are based on the personal knowledge of Plaintiff as to herself and on information

10   and belief (including the investigation of counsel and review of publicly available information) as to

11   all other matters stated herein.

12                          **INTRODUCTION**

13    1.    This is an action brought by Plaintiff against Myokardia and the members of the

14   Myokardia board of directors (the "Board" or the "Individual Defendants" and collectively with the

15   Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities

16   Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of

17   Myokardia by affiliates of Bristol Myers Squibb.

18    2.    Defendants have violated the above-referenced Sections of the Exchange Act by

19   causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the

20   "Solicitation Statement") to be filed on October 19, 2020 with the United States Securities and

21   Exchange Commission ("SEC") and disseminated to Company stockholders.  The Solicitation

22   Statement recommends that Company stockholders tender their shares in support of a proposed

23   transaction whereby Myokardia will be acquired by Bristol Myers Squibb through its direct wholly-

24   owned subsidiary Gotham Merger Sub Inc. ("Merger Sub"), whereby Merger Sub will merge with

25   and into Myokardia with Myokardia continuing as a surviving corporation and a wholly owned

26   subsidiary of Bristol Myers Squibb and cease to be publicly traded (the "Proposed Transaction").

27   Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the

28   "Merger Agreement"), each Myokardia common share issued and outstanding will be converted into

COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE
ACT OF 1934

- 1 -

the right to receive $225.00 per share in cash (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of Myokardia's outstanding common stock and will expire on November 16, 2020.

3.    Defendants have now asked Myokardia's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.    Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Myokardia's financial projections relied upon by the Company's financial advisors Centerview Partners LLC ("Centerview") and Guggenheim Securities, LLC ("Guggenheim") in their financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Centerview and Guggenheim. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Myokardia stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4.    It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5.    For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Myokardia's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Myokardia is headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Myokardia common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Sunil Agarwal, M.D. has served as a member of the Board since March 2016.

11.     Individual Defendant Mary Cranston has served as a member of the Board since April 2016.

12.     Individual Defendant Tassos Gianakakos has served as a member of the Board, the Company's Chief Executive, and President since October 2013.

13.     Individual Defendant David Meeker, M.D. has served as a member of the Board since April 2017.

14.     Individual Defendant Mark Perry has served as a Non-Executive Chair of the Board since March 2018, and as a member of the Board since December 2012.

15.     Individual Defendant Kim Popovits has served as a member of the Board since March 2017.

16.     Individual Defendant Wendy Yarno has served as member of the Board since March 2017.

17.     Defendant Myokardia is incorporated in Delaware and maintains its principal offices at 1000 Sierra Point Parkway, Brisbane, California. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "MYOK."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

20. Myokardia, a clinical stage biopharmaceutical company, discovers, develops, and commercializes targeted therapies for the treatment of serious and neglected rare cardiovascular diseases. Its lead product candidate is Mavacamten, an orally administered allosteric modulator of cardiac myosin, which is in Phase III clinical trial for the treatment of hypertrophic cardiomyopathy (HCM). The company also develops Danicamtiv, an orally administered small molecule, which completed Phase I and Phase IIa clinical trials on patients with dilated cardiomyopathy. Its preclinical programs include MYK-224, a small molecule program for the treatment of HCM targeting hypercontractility and impaired relaxation; ACT-1 for the treatment of diastolic dysfunction; and LUS-1 for the treatment of diastolic dysfunction. Myokardia was founded in 2012 and is headquartered in Brisbane, California.

21. On October 5, 2020, the Company and Bristol Myers Squibb jointly announced the Proposed Transaction:

NEW YORK & BRISBANE, Calif.--(BUSINESS WIRE)-- Bristol Myers Squibb (NYSE: BMY) and MyoKardia, Inc. (Nasdaq: MYOK) today announced a definitive merger agreement under which Bristol Myers Squibb will acquire MyoKardia for $13.1 billion, or $225.00 per share in cash. The transaction was unanimously approved by both the Bristol Myers Squibb and MyoKardia Boards of Directors and is anticipated to close during the fourth quarter of 2020.

MyoKardia is a clinical-stage biopharmaceutical company discovering and developing targeted therapies for the treatment of serious cardiovascular diseases. Through the transaction, Bristol Myers Squibb gains mavacamten, a potential first-in-class cardiovascular medicine for the treatment of obstructive hypertrophic cardiomyopathy ("HCM"), a chronic heart disease with high morbidity and patient impact. A New Drug Application ("NDA") for mavacamten for the treatment of symptomatic obstructive HCM – based on data from the EXPLORER-HCM study – is expected to be submitted to the U.S. Food and Drug Administration ("FDA") in the first quarter of 2021. Bristol Myers Squibb expects to explore the full potential of mavacamten in additional indications, including non-obstructive HCM, as well as develop MyoKardia's promising pipeline of novel compounds, including two clinical-stage therapeutics: danicamtiv (formerly MYK-491) and MYK-224.

"The acquisition of MyoKardia further strengthens our portfolio, pipeline and scientific capabilities, and is expected to add a meaningful medium- and long-term growth driver," said Giovanni Caforio, M.D., Board Chair and Chief Executive Officer of Bristol Myers Squibb. "We are further strengthening our outstanding cardiovascular franchise through the addition of mavacamten, a promising medicine with the potential to address a significant unmet medical need in patients with cardiovascular disease. Our companies share a commitment to innovation and bold science, and our respective strengths will help us realize the value inherent in this portfolio. We have long admired MyoKardia and what they have done to revolutionize cardiovascular treatments through a precision medicine approach. We look forward to welcoming their talented team to our company."

"MyoKardia was formed eight years ago with the aim of changing the world for people with serious cardiovascular diseases through bold and innovative science. Since then, MyoKardia's dedicated employees have established an unparalleled pipeline of targeted therapeutics designed to change the course of disease and return the heart to normal function," said Tassos Gianakakos, Chief Executive Officer of MyoKardia. "Bristol Myers Squibb shares our vision for transforming the treatment of cardiovascular disease. They value our team and the potential of our platform and, most importantly, share our unwavering commitment to placing patients at the center of everything we do. Together, our complementary strengths and expanded resources and reach will further accelerate the pace at which we can discover, develop and commercialize our novel medicines for the benefit of people suffering from cardiovascular disease around the world."

**Compelling Benefits**

Bristol Myers Squibb expects the transaction, when complete, to:

- **Further strengthen the company's outlook with the addition of mavacamten, which has significant commercial potential in the lead indication, obstructive HCM, and upside in additional future indications, including non-obstructive HCM .** With the high unmet medical need in obstructive HCM, mavacamten can be a significant medium- and long-term growth driver. Mavacamten demonstrated clinically meaningful results in the pivotal Phase 3 EXPLORER-HCM trial, meeting the primary and all secondary endpoints, and showed meaningful improvements in symptoms, functional status and quality of life by reducing the obstruction of blood flow from the heart. This potential first-in-class medicine, for which an NDA is expected to be submitted to the FDA in the first quarter of 2021, may help to change the course of the disease.

- **Accelerate the expansion of Bristol Myers Squibb's cardiovascular portfolio.** Bristol Myers Squibb has established Eliquis® (apixaban) as the #1 oral

anticoagulant globally with a best-in-class profile, driven by leading commercial execution.Mavacamten will be a fully owned asset that fits well into Bristol Myers Squibb's existing portfolio, given the company's broad expertise in cardiovascular disease. Through this acquisition, Bristol Myers Squibb gains MyoKardia's critical talent and capabilities on the U.S. West Coast, which will support fully realizing the opportunity in obstructive HCM and exploring the full potential of mavacamten in additional indications. Bristol Myers Squibb will also be well positioned to advance the global development of MyoKardia's portfolio of clinical- and early-stage pipeline candidates, while continuing to advance its existing Factor XIa inhibitor program.

- **Deliver significant financial benefits.** The transaction is expected to add a significant growth driver during the medium- to long-term. It is expected to be minimally dilutive to Bristol Myers Squibb's non-GAAP earnings per share (EPS) in 2021 and 2022 and accretive beginning in 2023. Bristol Myers Squibb reaffirms its existing 2021 non-GAAP EPS guidance range. There is no reliable estimable comparable GAAP measure as described below.

**Transaction Terms and Financing**

Under the terms of the merger agreement, a subsidiary of Bristol Myers Squibb will promptly commence a tender offer to acquire all of the outstanding shares of MyoKardia's common stock for $225.00 per share in cash. MyoKardia's Board of Directors unanimously recommends that MyoKardia shareholders tender their shares in the tender offer.

The transaction is subject to customary closing conditions, including the tender of a majority of the outstanding shares of MyoKardia's common stock and the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. Following the successful closing of the tender offer, Bristol Myers Squibb will acquire all remaining shares of MyoKardia that are not tendered into the tender offer through a second-step merger at the same price of $225.00 per share.

Bristol Myers Squibb expects to finance the acquisition with a combination of cash and debt.

\* \* \*

**Advisors**

Gordon Dyal & Co., LLC is serving as exclusive financial advisor to Bristol Myers Squibb, and Kirkland & Ellis LLP is serving as legal counsel. Centerview Partners LLC and Guggenheim Securities are acting as joint financial advisors to MyoKardia and Goodwin Procter LLP is serving as legal counsel.

COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934

It is therefore imperative that Myokardia's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.    The Materially Incomplete and Misleading Solicitation Statement**

22.    On October 19, 2020, Myokardia filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.  The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

23.    The Solicitation Statement fails to provide material information concerning financial projections by Myokardia management. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. *See* Solicitation Statement at 47.   Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Myokardia management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or . . . market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007).

24.    The Solicitation Statement sets forth a brief summary of the Projections but fails to disclose the specific inputs and assumptions that were used to risk-adjust the Projections. The

omission of the inputs to the Projections are material because the Projections are intended to be management's best estimate of the Company's future cash flows, but without the disclosure of the inputs and assumptions for risk-adjustment, shareholders cannot discern whether they agree that management has adequately adjusted the Projections for market and regulatory risk. The omission therefore renders the Solicitation Statement misleading as the Projections form the basis for Centerview's financial analyses and fairness opinion.

25.     Further, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2045: (a) EBIT and (b) Unlevered Free Cash Flow, but fails to provide line items used to calculate EBIT or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Solicitation Statement at 48-49. This omission is material because without this information, Myokardia's public shareholders are unable to fully understand the analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to tender their shares.

26.     With respect to Centerview's *Selected Public Company Analysis*, the Solicitation Statement fails to disclose the basis and assumptions for selecting a reference range of 2024E EV/Revenue Trading Multiples of 4.0x to 6.0x to apply to the Company's estimated calendar year risk-adjusted 2024 net revenue as set forth in the Projections. Solicitation Statement at 33.

27.     With respect to Centerview's *Selected Precedent Transaction Analysis*, the Solicitation Statement fails to disclose the basis and assumptions for selecting a reference range of 9.5x to 11.5x four-year forward revenue multiples. Solicitation Statement at 34-35.

28.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) Centerview's basis for assuming that unlevered free cash flows would decline in perpetuity after December 31, 2045 at a rate of free cash flow decline 80% year-over-year; (ii) the individual inputs and assumptions underlying the range of discount rates from 9.0% to 11.0%; and (iii) the Company's fully diluted outstanding shares as of October 1, 2020; Solicitation Statement at 35.

---

COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934

29.     With respect to Centerview's analysis of stock price targets, the Solicitation Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources for the price targets. Solicitation Statement at 36.

30.     With respect to Centerview's analysis of premiums paid in the transactions analyzed in the *Premiums Paid Analysis*, the Solicitation Statement fails to disclose those premiums observed by Centerview in the analysis. Solicitation Statement at 36.

31.     With respect to Guggenheim's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) Company's terminal values; (ii) the individual inputs and assumptions underlying the range of discount rates from 8.5% to 10.5%; and (iii) the individual inputs and assumptions underlying the use of an illustrative perpetual growth rate of negative 80%. Solicitation Statement at 43.

32.     With respect to Guggenheim's *Myokardia Selected Precedent Merger and Accquisition Transactions Analysis*, the Solicitation Statement fails to disclose the basis and assumptions for selecting a reference range of transaction enterprise value/risk adjusted revenue multiple range of 4.0x to 7.3x. Solicitation Statement at 44.

33.     With respect to Guggenheim's analysis of Premia Paid in Selected Merger and Acquisition Transactions, the Solicitation Statement fails to disclose those premiums observed by Centerview in the analysis. Solicitation Statement at 45.

34.     With respect to Guggenheim's analysis of Wall Street Equity Research Analyst Stock Price Targets, the Solicitation Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources for the price targets. Solicitation Statement at 45.

35.     With respect to the *Background of the Transactions*, the Solicitation Statement fails to disclose the reason why it was necessary to retain both Centerview and Guggenheim for the purposes of facilitating the Proposed Transaction and to render fairness opinions.

36.     In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer,

1   Plaintiff will be unable to make a fully-informed decision regarding whether to tender her shares,

2   and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

3   **CLAIMS FOR RELIEF**

4   **COUNT I**
     **Violations of Section 14(e) of the Exchange Act**
5   **(Against All Defendants)**

6       37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

7   herein.

8       38.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to

9   make any untrue statement of a material fact or omit to state any material fact necessary in order to

10  make the statements made, in the light of the circumstances under which they are made, not

11  misleading . . ." 15 U.S.C. § 78n(e).

12      39.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation

13  Statement in which they made untrue statements of material facts or failed to state all material facts

14  necessary in order to make the statements made, in the light of the circumstances under which they

15  are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly

16  disregarded that the Solicitation Statement failed to disclose material facts necessary in order to

17  make the statements made, in light of the circumstances under which they were made, not

18  misleading.

19      40.     The Solicitation Statement was prepared, reviewed and/or disseminated by

20  Defendants. It misrepresented and/or omitted material facts, including material information about the

21  consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the

22  Company's financial projections, and the financial advisor's valuation analyses and resultant fairness

23  opinion.

24      41.     In so doing, Defendants made untrue statements of material fact and omitted material

25  information necessary to make the statements that were made not misleading in violation of Section

26  14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the

27  process and in the preparation of the Solicitation Statement, Defendants were aware of this

28  information and their obligation to disclose this information in the Solicitation Statement.

---

COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE
ACT OF 1934

42.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

43.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

44.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**
**Violations of Section 14(d)(4) of the Exchange Act and**
**Rule 14d-9 Promulgated Thereunder**
**(Against All Defendants)**

45.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

46.     Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

47.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

48.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

49.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be

materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

50.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT III**
**Violations of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Myokardia within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Myokardia, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Myokardia, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Myokardia, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Solicitation Statement at issue contains

the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

55.    In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.    Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

B.    Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.    Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  October 19, 2020                **WOLF HALDENSTEIN ADLER**
                                         **FREEMAN & HERZ LLP**

                                         By: ___/s/ Rachele R. Byrd___
                                             RACHELE R. BYRD

                                         BETSY C. MANIFOLD
                                         RACHELE R. BYRD
                                         MARISA C. LIVESAY
                                         BRITTANY N. DEJONG
                                         750 B Street, Suite 1820
                                         San Diego, CA 92101
                                         Telephone: (619) 239-4599
                                         Facsimile: (619) 234-4599
                                         manifold@whafh.com
                                         byrd@whafh.com
                                         livesay@whafh.com
                                         dejong@whafh.com

                                         Of Counsel:

                                         **WOLF HALDENSTEIN ADLER**
                                         **FREEMAN & HERZ LLP**
                                         GLORIA KUI MELWANI
                                         270 Madison Avenue
                                         New York, NY 10016
                                         Telephone: (212) 545-4600
                                         Facsimile: (212) 686-0114

                                         ***Counsel for Plaintiff***

809909

COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934